UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                  )
DONNA NICKERSON-RETI and          )
CURTIS RETI,                      )
                                  )
              Plaintiffs,)
                                  )
         v.                       )        CIVIL ACTION
                                  )        NO. 10-10412-WGY
LEXINGTON PUBLIC SCHOOLS,         )
MINUTEMAN REGIONAL CAREER AND     )
TECHNICAL HIGH SCHOOL,            )
MASSACHUSETTS DEPARTMENT OF       )
ELEMENTARY AND SECONDARY          )
EDUCATION, MARY SULLIVAN-KELLEY,)
LINDA CHASE, MICHAEL JONES,       )
SHERRY COUGHLIN, JAMES LAVERTY, )
JACK DILLON, WILLIAM VERBITZ,     )
and JANE WIGGINS                  )
                                  )
              Defendants.)
_____)
```

MEMORANDUM & ORDER

YOUNG, D.J.                                September 27, 2012

I.   **INTRODUCTION**

Curtis Reti ("Reti") and his mother, Donna Nickerson-Reti

("Nickerson-Reti") (collectively, the "Retis"), brought this suit

against the Lexington Public Schools ("Lexington"), the Minuteman

Regional Career and Technical High School ("Minuteman"), the

Massachusetts Department of Elementary and Secondary Education

(the "Department"), and a number of individual employees of the

schools in their individual and official capacities (the

"Employees").  The Retis assert nine counts: (1) failure to

provide an appropriate individualized education program ("IEP") in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 <u>et seq.</u>; (2) failure to implement the appropriate provisions of the IEP in violation of the IDEA; (3) discrimination against both of the Retis by three of the Employees in violation of 42 U.S.C. § 1983; (4) denial of IEP benefits and parental participation by Lexington and Minuteman in violation of 42 U.S.C. § 1983; (5) discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u>; (6) retaliation in violation of the Americans with Disabilities Act; (7) appeal of the final decision of the Massachusetts Bureau of Special Education Appeals in case #09-0139; (8) appeal of the final decision of the Bureau of Special Education Appeals in case #10-2604; and (9) denial of benefits in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  The Department and the Bureau of Special Education Appeals (collectively, the "State Defendants") and Lexington and Minuteman (collectively, the "Local Defendants") moved for summary judgment.

### A.   Procedural Posture

The Retis originally filed this suit <u>pro se</u> on March 8, 2010.  <u>See</u> Compl., ECF No. 1.  The original complaint named all of the present defendants as well as numerous other individuals and government entities; the complaint was 157 pages and

incorporated hundreds of pages of documents.  Id.  On October 6, 2010, in response to motions by many of the defendants, this Court dismissed the complaint without prejudice for failure to comply with the "short and plain statement" requirement of Federal Rule of Civil Procedure 8.  See Elec. Order, Oct. 6, 2010.  The Court at that time also advised Nickerson-Reti that because her son, Reti, was eighteen years old, she could not represent him in this case.  Id.

The Retis, then represented by counsel, filed the First Amended Complaint on January 15, 2011.  Pl.'s First Am. Compl., ECF No. 63.  On February 23, 2011, with this Court's leave, the Retis filed the Second Amended Complaint, the operative complaint in the case.  Pl.'s Second Am. Compl., ECF No. 65.  Lexington, Minuteman, and the Employees filed a motion to dismiss the Second Amended Complaint on March 9, 2011.  Defs.' Mot. Dismiss Pls.' Second Am. Compl., ECF No. 67.  This Court granted the motion in part and denied the motion in part: (1) dismissing with prejudice Counts I, II, V, VI and IX as to the Employees; (2) dismissing without prejudice Counts III and IV for failure to meet the pleading standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); and (3) denying the motion as to Counts I, II, V, VI, VII, VIII and IX against Lexington and Minuteman.  Order, ECF No. 84.  The Retis moved for leave to file a third amended complaint realleging Counts III and IV, Pl.'s Request Leave File Third Am.

Compl., ECF No. 89, but this Court denied the motion as futile, see Elec. Order, May 26, 2011.

The Court endorsed the parties' joint proposed case management schedule on May 2, 2011, ordering that discovery be completed by December 1, 2011, and that the Retis file a motion to supplement the administrative record, if at all, by May 11, 2011.[1]  Partial Joint Status, ECF No. 86.  The Retis did not file a motion to supplement the administrative record, nor did they conduct any discovery.

On June 29, 2011, the Department filed a motion to dismiss the Second Amended Complaint.  State Def.'s Mot. Dismiss, ECF No. 95.  On September 16, 2011, this Court denied[2] the Department's motion and ordered the Department to join the Bureau of Special Education Appeals (the "Bureau" or "BSEA") as a party to the

---

[1] The First Circuit has provided that

> [a]s a means of assuring that the administrative process is accorded its due weight and that judicial review does not become a trial de novo, thereby rendering the administrative hearing nugatory, a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so.

Roland M. v. Concord Sch. Comm., 910 F.2d 983, 996 (1st Cir. 1990).  This Court thus required the parties to file motions seeking to supplement the administrative record and explain the reasons therefore.

[2] This Court was prepared to grant the Department's motion to dismiss, as the claims lie against the Local Defendants rather than the Department, but the Department opted to remain in the case when it became aware that the Bureau of Special Education Appeals was to be joined.

action.  Order, ECF No. 100.  The Department joined the Bureau as a party, albeit two weeks late.  Notice Joining BSEA Compliance Court's Order Fed. R. Civ. P. 19(a)(2), ECF No. 102.  The Court further ordered the Retis to file a motion for leave to file an amended complaint, including the Bureau as a defendant and conforming the complaint to allegations made in their opposition to the Department's motion to dismiss.  Order.  The Retis never filed a motion to amend the complaint.[3]

On December 1, 2011, the Local Defendants moved for summary judgment on all counts.  Mot. Summ. J. Defs., Lexington Public Schools Minuteman Career Technical High School ("Local Defs.' Mot. Summ. J."), ECF No. 103; Defs.' Lexington Public Schools Minuteman Career Technical High School, Mem. Law Supp. Mot. Summ. J. ("Local Defs.' Mem."), ECF No. 104.  On December 16, 2011, the

---

[3] Nickerson-Reti states in the opposition brief to the motions for summary judgment, "I am not an attorney, and do not understand if I am still being asked to do something relative to this claim since the [Department] and the BSEA are now joining together as co-defendants."  Pl.'s Opp'n State Defs.', Lexington Defs.', & Minuteman Defs.' Mots. Summ. J. ("Pls.' Opp'n") 22, ECF No. 121.  This Court's order was issued (and the thirty-day filing deadline expired) while the Retis were still represented by counsel.  See Mot. Withdraw Counsel, ECF No. 113 (withdrawing pursuant to Nickerson-Reti's letter of termination on December 15, 2011).  The Retis' failure to amend their complaint precludes them from alleging any claims directly against the Bureau or from asserting as claims the arguments raised in their opposition brief to the Department's motion to dismiss.  The Retis, in their opposition to the current motions for summary judgment, restate the claims in the Second Amended Complaint, adding the Bureau as a defendant.  Pls.' Opp'n 24-33.  Such addition to their opposition brief does not serve to amend the complaint in compliance with this Court's order.

State Defendants moved for summary judgment on all counts.  State Defs.' Mot. Summ. J., ECF No. 110; State Defs.' Mem. Supp. Mot. Summ. J. ("State Defs.' Mem."), ECF No. 111.

On December 16, 2011, the Retis' counsel moved to withdraw as attorney pursuant to the Retis' termination letter of December 15, 2011, Mot. Withdraw Counsel, ECF No. 113, which motion this Court granted, Elec. Order, Dec. 19, 2011.  The Retis then filed a motion to stay the proceedings ninety days, which motion this Court denied.  Elec. Order, Dec. 19, 2011.  On January 6, 2012, the Retis filed an opposition to the motions for summary judgment.  Pls.' Opp'n State Defs.', Lexington Defs.' Minuteman Defs.' Mots. Summ. J. ("Pls.' Opp'n"), ECF No. 121.  The State Defendants and Local Defendants submitted reply briefs.  State Def.'s Reply, ECF No. 125; Reply Mem. Law Further Supp. School Defs.' Mot. Summ. J. & Mot. Strike Extraneous Materials ("Local Defs.' Reply"), ECF No. 126.

The Court heard oral argument on January 24, 2012 and took the matter under advisement.  <u>See</u> Elec. Clerk's Notes, Jan. 24, 2012.  Both parties filed supplemental briefs subsequent to the hearing.  Supplemental Mem. Law Defs., Lexington Public Schools & Minuteman Career & Technical High School, Supp. Mot. Summ. J. ("Local Defs.' Supplemental Mem."), ECF No. 127; Pls.' Mem. Opp'n Summ. J. ("Pls.' Supplemental Mem."), ECF No. 128.

**B.    Facts Alleged**[4]

Reti is currently a twenty year-old male who suffers from a number of disabilities including Asperger's syndrome ("Asperger's"), attention deficit hyperactivity disorder ("ADHD"), several learning disabilities, seizures, mitochondrial disease, and other physical ailments.  Second Am. Compl. ¶ 15. Nickerson-Reti is Reti's mother, who likewise suffers from Asperger's, ADHD, dyslexia, learning disabilities, and physical health issues.  Id. ¶ 14.  Since he was in the second grade, Reti has been involved in special education programs resulting in multiple individualized education programs ("IEPs").  Id. ¶ 17. Throughout this time, Nickerson-Reti has attempted to take an active role in the development of IEPs for her son.  Id. ¶ 20.

On June 29, 2005, while Reti was enrolled in the Lexington Public Schools, an IEP was agreed to by Nickerson-Reti and Lexington employees.  Id. ¶ 21.  On September 2, 2005, however, Mary Sullivan-Kelley, Lexington's supervisor of student services, informed Nickerson-Reti that the June 29 IEP would not be honored.  Id. ¶ 22.  Lexington unilaterally developed a new IEP that lacked many essential features of the earlier one.  Id. ¶ 23.  In the ensuing two years - Reti's eighth and ninth grade

---

[4] This Section lays out the general allegations relevant to this case.  Specific facts regarding the formulation of the individualized education program and the administrative proceedings are addressed in depth infra.

years - Nickerson-Reti and Lexington engaged in an ongoing dispute regarding the proper educational services to accommodate Reti.  See, e.g., id. ¶¶ 25-26, 33, 54.

For his tenth grade year, Reti was accepted to Minuteman. Id. ¶ 58.  Throughout the year, Minuteman refused to develop and implement an IEP to Nickerson-Reti's satisfaction.  Id. ¶¶ 59-67. During that year, despite a statement from a medical professional that Reti must drink fluids throughout the day due to his mitochondrial disease, a teacher and administrator at Minuteman punished Reti for drinking fluids during class.  Id. ¶¶ 69-71.

Prior to his eleventh grade year, despite an IEP meeting involving Nickerson-Reti, Minuteman, and Lexington, no suitable placement was found for Reti.  Id. ¶¶ 72-76.  During the ongoing dispute over the proper services that ought be provided, one of the schools filed a 51A report of neglect with the Department of Social Services against Nickerson-Reti.  Id. ¶ 80.  Though not stated clearly in the complaint, Reti seems to have been removed from public schooling and home-schooled at this point due to Nickerson-Reti's belief that he was not receiving adequate accommodations from Lexington or Minuteman.  See id. ¶¶ 46-47, 55-57.

On July 3, 2008, Nickerson-Reti requested a due process hearing with the Bureau regarding her dispute with Lexington over Reti's IEP.  Id. ¶ 81.  This case was designated #09-139.  On

8

January 6, 2010, the Bureau hearing officer bifurcated the
proceedings and stated her intention to hold separate hearings on
retroactive claims and prospective or current claims.  Id. ¶ 88.
The hearing on the retroactive claims was scheduled for January
11, 2010.  Id. ¶ 87.  Nickerson-Reti failed to appear at the
hearing, and the hearing officer dismissed the retroactive claims
with prejudice for failure to prosecute.  Id. ¶¶ 89-90.
Nickerson-Reti contends that she was unable adequately to prepare
for the hearing due to her own disabilities and because the
hearing officer refused her reasonable requests for continuances
or other accommodations.  Id. ¶ 92, 94.  Though not mentioned in
the complaint, the prospective and current claims portion of case
#09-139 was heard on March 23, 24, and April 7, 2010.  See Admin.
R. 897-931.  In a ruling on May 21, 2010, the hearing officer
issued an order that once Reti re-enrolled at Lexington, he was
to be provided a therapeutic day placement at the Pathways
School, rather than the placement requested by Nickerson-Reti.
Id. at 931.

     Reti was also the subject of Bureau case #10-2604, which was
of limited scope addressing evaluations of Reti for use in the
primary proceeding discussed above.  Second Am. Compl. ¶ 87.  On
December 7, 2009, the hearing officer in case #10-2604 denied
Nickerson-Reti's request for funds to pay for evaluations of
Reti.  Id.  As a result, Nickerson-Reti was unable to obtain

9

independent evaluations of her son before the hearing on case #09-139.   Id. ¶¶ 85, 87.

### C.   Federal Jurisdiction

The complaint in this case asserts claims under, inter alia, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and 42 U.S.C. § 1983.   Thus, this case arises under the laws of the United States, and this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331.

## II.   ANALYSIS

### A.   Appeals of the Administrative Decisions and Alleged Violations of the IDEA

The IDEA provides federal funding for states to educate handicapped children, and in turn requires states to provide a "free appropriate public education" to all handicapped children. 20 U.S.C. §§ 1400(c), 1414(b)(2)(A), 1416.   Participating states are required to provide (at a minimum) "instruction and support services sufficient 'to permit the child to benefit educationally from that instruction.'"   Roland M. v. Concord Sch. Comm., 910 F.2d 983, 987 (1st Cir. 1990) (quoting Board of Educ. v. Rowley, 458 U.S. 176, 203 (1982)).   Massachusetts has set an even higher standard, defining an appropriate education as one that assures the "maximum possible development" of the child.   Id.   Moreover, such education must be delivered in the "least restrictive

10

environment" appropriate for the student.  <u>See</u> 34 C.F.R. §

300.552(d); Mass. Gen. Laws ch. 71B, § 2.  As such, mainstreaming

is preferred.  <u>Roland M.</u>, 910 F.2d at 987.

The primary requirement under the IDEA is the obligatory

creation of an IEP for each student, reviewed annually and

revised when necessary.  <u>Rowley</u>, 458 U.S. at 181-82.  The IEP

includes provisions on the student's present level of educational

attainment, the short-term and long-term academic and functional

goals for the student's education, objective criteria to measure

the student's progress, and the services to be provided.  20

U.S.C. § 1414(d)(1)(A).  The IEP is created by a team of

individuals including the student's parents and teacher,

designated specialists, and a representative of the school.  <u>Id.</u>

§ 1414(d)(1)(B).

If complaints arise, the state must convene "an impartial

due process hearing," <u>see</u> 20 U.S.C. § 1415(f), which, in

Massachusetts, is conducted by the Bureau.  The hearing officer's

determination is reviewable in state or federal court.  <u>Roland</u>

<u>M.</u>, 910 F.2d at 988.

### 1.    Standard of Review

The IDEA provides that the district court "shall receive the

records of the administrative proceedings, shall hear additional

evidence at the request of a party, and basing its decision on

the preponderance of the evidence, shall grant such relief as the

court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).
The First Circuit has clarified that the district court must
render a "bounded independent decision [] - bounded by the
administrative record and additional evidence, and independent by
virtue of being based on a preponderance of the evidence before
the court."  Roland M., 910 F.2d at 990 (alteration in original)
(quoting Town of Burlington v. Department of Educ., 736 F.2d 773,
791 (1st Cir. 1984)).  Moreover, trial courts must "give 'due
weight' to the state agency's decision in order to prevent judges
from 'imposing their view of preferable educational methods upon
the States.'"  Id. at 989 (citing Rowley, 458 U.S. at 207).  The
burden is on the complaining party to show the Bureau's decision
was wrong.  Id. at 991.

     The First Circuit has set forth a dual assessment of a
student's IEP: "First, has the State complied with the procedures
set forth in the Act?  And second, is the individualized
educational program developed through the Act's procedures
reasonably calculated to enable the child to receive educational
benefits?" or in Massachusetts, to "assure the maximum possible
development of handicapped students"?  Roland M., 910 F.2d at
990-91.  The court emphasized, however, that the paramount
concern is "whether a proposed IEP is adequate and appropriate
for a particular child at a given point in time."  Id. at 990
(citations omitted) (internal quotation marks omitted).

Moreover, "an IEP must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated." Id. at 992.

It bears noting at this point that the Court will be reviewing the hearing officer's determinations based solely on the administrative record, submitted manually by the Department on September 21, 2010, see ECF No. 53, and the supplemental administrative record, submitted manually by the Department on May 3, 2011, see ECF No. 88, and January 11, 2012, see ECF No. 123.  As mentioned supra in the Procedural History, the parties jointly submitted a proposal whereby all supplemental documents outside the scope of the administrative record would be submitted for this Court's approval by July 2011.  See Partial Joint Status 4.  The Retis never filed a motion to supplement the administrative record, and the Court will not now consider any of the additional documents attached to the Retis' opposition brief for the purposes of their claims under the IDEA.[5]

### 2.   The Current/Prospective Claims (Bureau Decision #09-0139)

The Retis appeal the Bureau's decision of May 21, 2010, in which the hearing officer upheld the November 2009 IEP and

---

[5] The Court will, however, consider these documents as they relate to the Retis' claims brought under the ADA and Section 504 of the Rehabilitation Act.

placement recommendation and denied Nickerson-Reti's requested accommodation for Reti.

### a. Procedural Adequacy

### i. IEP Creation

The First Circuit has endorsed the view that "[a]dequate parental involvement and participation in formulating an IEP . . . appear to be the Court's primary concern in requiring that procedures be strictly followed." Roland M., 910 F.2d at 995 (alteration in original) (quoting Doe v. Defendant I, 898 F.2d 1186, 1191 (6th Cir. 1990)).

Nickerson-Reti claims that the IEP was unilaterally developed by Lexington, that her input was ignored, and that Lexington created the IEP based on stale information on Reti that was over a year old. Pls.' Opp'n 19-20. The hearing officer found, and the record supports, that Reti refused to attend the team meeting of November 2009, and that Nickerson-Reti (who was in attendance) refused to provide the team with any of Reti's medical records or information on Reti's then-placement in the Harvard Extension School. See Admin. R. 908, 921; Supplemental Admin. R. 3-188-89, 3-401. Thus, the team's use of allegedly outdated information in creating the IEP was largely due to Reti and Nickerson-Reti's failure to cooperate and not a procedural violation by Lexington. See Roland M., 910 F.2d at 995 (holding that in light of the parents' "lack of cooperation with ongoing

14

attempts to develop the [IEP]" and the "lack of any indication of procedural bad faith," the court was satisfied that the school "fulfilled the essence of its procedural responsibilities") (citations omitted) (internal quotation marks omitted).

Nickerson-Reti objects to the team put together to evaluate Reti. Specifically, Nickerson-Reti complains that the team included "the expert witness they planned to use for the January hearing." Pls.' Opp'n 19. Presumably, Nickerson-Reti is referring to Dr. Jeff Bostic, who consulted with Lexington (among other schools) and made recommendations regarding the special education needs of some of their students. Supplemental Admin. R. 3-288-91. Team participants often testify at administrative hearings regarding their recommendation, however, and Nickerson-Reti has raised no legal argument as to why Bostic's presence at the IEP meeting was improper.

Nickerson-Reti notes that the teacher present at the meeting "last saw Curtis a year and a half earlier," and was therefore unacceptable. Pls.' Opp'n 19-20. Reti had not been publicly schooled for the prior year and a half, however, so there was no public teacher with more recent knowledge of Reti available. See Admin. R. 921. Nickerson-Reti claims that the other team members comprised a "cast of attendees who did not know Curtis or his mother, but who were there to report the findings contained in reports they did not write." Pls.' Opp'n 19-20. She asserts it

15

did not "conform to any of the guidelines for TEAM composition."
Id. at 20.  Sherry Coughlin, Supervisor of Special Education at
Lexington and attendee of the team meeting, testified, however,
that the team complied with the requirements of the IDEA and that
the team considered evaluations performed by an occupational
therapist, a speech and language therapist, a vocational
therapist, and Reti's independent doctor, Dr. Lovecky.
Supplemental Admin. R. 2-228.  The Retis have failed to
articulate how the team was improper under 20 U.S.C.
§ 1414(d)(1)(B).  Their arguments as to the team's flaws fail.

Nickerson-Reti claims that Colby Brunt, Lexington's counsel
and chair of the November 2009 team meeting, told her "we will
make the determination about how much of your concerns will make
it into the IEP."  Pls.' Opp'n 20.  This Court has listened to a
recording of the meeting, however, and Brunt actually stated,
"We'll make that determination as far as what should be
incorporated into the IEP based on your information that's been
incorporated in the past."  IEP Meeting Tape, Nov. 9, 2009
(emphasis added) (responding to Nickerson-Reti's statement that
she did not wish to currently voice her concerns with the
November IEP, but that the team should refer to the details of
what she had found acceptable in prior IEPs).

In sum, Nickerson-Reti has not met her burden of demonstrating procedural shortcomings in the creation of the November 2009 IEP.  See Roland M., 910 F.2d at 995.

### ii.  The Bureau Hearing

Nickerson-Reti also argues that the Bureau hearing officer was biased against her and that Lexington's counsel, Brunt, improperly influenced the hearing officer's decisions. Specifically, Nickerson-Reti claims that the hearing officer allowed Brunt "essentially testifying, to give her own interpretations of Dr. Nickerson-Reti's exhibits" and that Brunt made "false statements and mis-directions."  Pls.' Opp'n 12.  The transcript shows, however, that Brunt properly objected to - and the hearing officer was within her discretion to exclude - a myriad of proposed exhibits because they related to the Retroactive Claims, did not provide a current picture of who Reti was, or were otherwise inadmissible.  Supplemental Admin. R. 17-157.

Nickerson-Reti claims that Brunt untruthfully stated that Reti had been preliminarily accepted at Pathways (the placement at issue), Pls' Opp'n 13, yet the evidence shows that Reti had indeed been accepted based on a redacted application, and that Pathways was awaiting a full application from Reti, Supplemental Admin. R. 349.  She claims that Brunt wrongly claimed that Nickerson-Reti "testified that she wanted a 1:1 aide who would go

to nightclubs with Curtis" and that the final decision incorrectly "reports that as fact" even though the information was "completely made up." Pls.' Opp'n 13. The transcript of Nickerson-Reti's testimony shows, however, that she stated that with Nickerson-Reti's proposed program, Reti would have "the opportunity for maybe taking that aide and going to a dance and learning how to function in that environment, or going to a club, or going to a concert." Supplemental Admin. R. 2-154.

Nickerson-Reti argues that the hearing officer wrongly placed too much weight on the testimony of Dr. Bostic, given that he "could not separate his personal and professional opinions" because he "broke down crying about his own disabled child." Pls.' Opp'n 14. While Nickerson-Reti is correct that Dr. Bostic did (admittedly unusually) start crying during his testimony talking about his own child's struggles, the rest of his testimony sufficiently established his expertise and objective recommendation as to Reti. See Supplemental Admin. R. 3-287-357.

Nickerson-Reti has failed to prove by a preponderance of the evidence that the Bureau hearing as to the Current and Prospective Claims was procedurally deficient. The First Circuit's conclusion in Roland M. is instructive as to the current case:

> There is nothing to indicate that the hearing officer
> based his decision on actual bias or hostility toward the
> parents or their counsel. The record is similarly barren
> of any credible suggestion that the hearing officer

18

> prejudged facts . . . . The parents' attorney was permitted to present evidence, examine witnesses, argue, and object - prerogatives which he exercised vigorously. When asserted, objections were fully considered.  When rejected, explanations were generally given.  No more was required.

Roland M., 910 F.2d at 997-998 (citations omitted).  The Court

thus holds that the Bureau hearing #09-1039 was procedurally

adequate.

### b.   Substantive Compliance

The First Circuit has asserted that

> [b]eyond the broad questions of a student's general capabilities and whether an educational plan identifies and addresses his or her basic needs, courts should be loathe to intrude very far into interstitial details or to become embroiled in captious disputes as to the precise efficacy of different instructional programs.

Id. at 992.  The record and transcript (including the testimony

of Reti and Nickerson-Reti) is replete with evidence supporting

the hearing officer's conclusion that Reti "has clear academic

strengths and strong cognitive abilities," but "requires

remediation regarding his written output, organizational skills,

life skills, and also extensive support to assist him with social

pragmatic[s]."  Admin. R. 926.  See, e.g., id. at 1012-48

(including the neuropsychological evaluation by Mary Coakley

Welch, Ph.D.), id. at 1796-1807 (including Kristen Mallett Bator,

MS, CCC, evaluating Reti's speech-language and written language),

id. at 1808-53 (including psychological evaluation of Reti by

Deirdre V. Lovecky, Ph.D.).

19

Lexington proposed (and the hearing officer ordered) a therapeutic day placement for Reti, specifically at Pathways, where Reti would work in small groups and have the benefit of a therapeutic staff to work with him to help him connect with other students.   Id. at 925.  Nickerson-Reti and Reti testified that Reti would do poorly in such a setting and that it would not sufficiently challenge Reti academically.   Supplemental Admin. R. 2-134-35; Id. at 3-165-66.  Dr. Bostic credibly testified, however, that given Reti's Asperger's and his stated feelings of isolation and hopelessness, this type of intense social remediation was necessary and the "least restrictive setting."[6] Id. at 3-308-11.  Moreover, the hearing officer found that the academic program seemed sufficient, particularly in light of Reti's testimony that his English skills approximated that of a sixth or seventh grade student, and his math skills, that of an eleventh or twelfth grade or college student.  Id. at 3-175-76. Barbara Fortier, Lexington's out-of-district coordinator, further testified that it was possible that if Reti was not sufficiently challenged in science (his favorite subject and the one in which he was most proficient), the school could look into outside processes for the curriculum so Reti could take a more advanced science course elsewhere.  Id. at 357-63.

---

[6] Notably, neither Lexington nor Nickerson-Reti advocated to mainstream Reti, as such efforts had been extremely unsuccessful in the past.

Nickerson-Reti has failed to prove by a preponderance of the evidence that the IEP's recommendation for a therapeutic day placement was not "reasonably calculated" to enable Reti to receive educational benefits (as required under federal law) or even to assure Reti's "maximum possible development" (as required under Massachusetts law) in the least restrictive environment.

Moreover, Nickerson-Reti has failed to show by a preponderance of the evidence that her desired placement for Reti was proper.  Nickerson-Reti proposed a concurrent high school/college enrollment where Reti would take two classes at a time and be accompanied at all times by an aide.  See Supplemental Admin. R. 2-150-54.  Nickerson-Reti proposed that this aide could assist Reti not only in note-taking and class participation, but in all social interactions and executive functions.  Id.

The hearing officer found, and the evidence supports, that Reti already struggled with a single college course in science, his strongest subject, and that he spent between thirty and sixty hours per week on the homework in one class.  Admin. R. 914; Supplemental Admin. R. 3-179.  Moreover, Dr. Bostic and other evaluators testified that the concurrent placement would be extremely isolating for Reti and only increase his dependence on adults to function in society.  See id. at 3-305.  Lisa Dahill, Reti's former teacher, testified that after being out of school

for over a year, Reti needed to learn how to be a student again in a supportive environment where he could develop self-confidence - an environment that did not exist in the concurrent placement. Id. at 3-380-81.

Furthermore, the documents submitted by Nickerson-Reti described a pilot program for students with severe learning disabilities (typically Down syndrome), such that they have been unable to pass the Massachusetts Comprehensive Assessment System ("MCAS") exam. See Admin. R. 928. Reti passed the MCAS exam in previous years, however, and would not be an appropriate peer for a program focused on students with Down syndrome. Id.

After carefully considering the matter and explaining her reasoning in a thirty-four page decision, the hearing officer held:

> 1. Lexington shall provide Student a private therapeutic day placement that offers him participation in small classes, with a challenging academic curriculum, and social pragmatic interventions, addresses Student's functional living issues and develops a transitional plan consistent with Student's aspirations of attending college, pursuant to the IEP developed in November 2009. Lexington's implementation of this order shall occur immediately upon Student's re-enrollment in Lexington.

> 2. Lexington shall implement Student's IEP at Pathways. Should Pathways no longer have a slot available for Student, Lexington shall locate or create a program consistent with this decision.

Id. at 931. Nickerson-Reti has not proven by a preponderance of the evidence that the November 2009 IEP or the hearing officer's order substantively violated Reti's or Nickerson-Reti's rights

under the IDEA; therefore, this Court affirms the holding of the hearing officer.

### 3.   The Retroactive Claims (Bureau Decision #09-0139)

The Retis appeal the Bureau's decision of February 17, 2010, in which the hearing officer dismissed the Retroactive Claims with prejudice for failure to prosecute.  Second Am. Compl. ¶¶ 127-131; Admin. R. 459, 674-95.

### a.   Fact Findings of the Hearing Officer

The hearing officer found the following facts in support of her decision:[7]  Nickerson-Reti filed a hearing request in July 2008.  Admin. R. 675.  The hearing was continued at the request of both parties to facilitate settlement discussions underway. Id.  In November 2008, the parties jointly requested the matter be placed "off calendar" until February 2009.  Id.  The hearing officer granted this request and allowed three months for Lexington to complete its three year reevaluation of Reti.  Id. The case was reopened in March 2009 at the request of Nickerson-Reti, and the matter was scheduled for hearing in June 2009.  Id.

---

[7] The Retis dispute some of the factual findings of the hearing officer in her February 17, 2010, decision.  Pls.' Opp'n 15-16.  It is not necessary to address these disputed facts, however, as the Court holds below that Nickerson-Reti's conduct - even in the less favorable light found by the hearing officer - did not reach the egregiousness contemplated by the First Circuit to warrant a dismissal with prejudice.

In April, Lexington filed a motion for summary judgment
regarding its right to conduct the proposed three year
reevaluation of Reti.  Id.  In May, Nickerson-Reti filed a motion
to compel Lexington to provide her evaluation consent, and
requested a postponement of the June hearing.  Id.  The hearing
officer granted Lexington's motion for summary judgment, denied
Nickerson-Reti's motion to compel, and denied her request to
postpone the hearing, noting Nickerson-Reti's failure to sign the
evaluation consent form for the last six months.  Id. at 675-76.
Simultaneously, the hearing officer issued a ten day show cause
order requiring the parties to explain why the case should not be
dismissed without prejudice for failure to prosecute.  Id. at
676.

Nickerson-Reti responded in a timely fashion, noting that
the evaluations were finally underway and that it would greatly
harm Reti to dismiss the case at this point.  Id.  The hearing
officer subsequently granted Nickerson-Reti's request for a
postponement of the June 2009 hearing, given that Nickerson-Reti
had signed the consent evaluation form and Lexington joined her
request for a postponement until after it completed the
evaluations.  Id. at 676-77.  The parties were instructed to
submit a written status report by June 30, 2009; it is unclear if
this report was ever filed.  Id. at 677.

In September 2009, the case was reassigned to a different
hearing officer (who ultimately decided both the Retroactive
Claims and the Current and Prospective Claims), and the parties
were instructed to submit a joint status report.  Id.  The report
was timely submitted and a conference call was scheduled for
October 15, 2009.  Id.  The hearing officer set the hearing dates
for December 8 and 9, Nickerson-Reti requested it be moved to
December 10 and 11 (dates not available to the hearing officer),
and the parties mutually agreed to hearing dates of January 11
and 14, 2010.  Id.

On December 23, 2009, Lexington filed a motion to compel
Nickerson-Reti's response to Lexington's first set of
interrogatories and request for document production, which was
originally due on December 14, 2009.  Id. at 677-78.  Nickerson-
Reti filed her responses on December 28, 2009, at which point
Lexington filed a second motion to compel claiming that she
provided only a partial response to their first motion to compel.
Id. at 678.  On December 30, 2009, Nickerson-Reti filed a
response to Lexington's motion, and noted at the end of the
document that she intended to request a postponement of the
January 2010 hearing date.  Id.

On January 4, 2010, Nickerson-Reti filed a motion to
postpone the January 2010 hearing date to allow Lexington to
complete its evaluation (set to be completed January 15, 2010),

25

and to allow her to complete independent evaluations of Reti that
had been scheduled, but not yet completed.  Id.  Nickerson-Reti
proposed to move the hearing to March, and noted that Lexington
had wasted time in completing Reti's evaluation due to the
school's "unwillingness" to use summer or vacation time for these
purposes.  Id. at 679.  On the same day, Lexington filed a motion
opposing Nickerson-Reti's request for postponement, arguing that
she did not put forth good cause to postpone, since the evaluator
had contacted her with appropriate dates for the situational
assessment, and given that the hearing officer had made clear to
the parties in November that she was not inclined to grant
further postponements to the January hearing dates.  Id.
Lexington further argued that it had prepared all documents and
scheduled all witnesses to proceed as scheduled in January, such
that postponement would be detrimental to all parties.  Id.
Lexington acknowledged Nickerson-Reti's right to proceed with
independent evaluations, but believed all relevant information
was already before the hearing officer.  Id.  On January 5,
Minuteman similarly opposed the motion, arguing that it would be
highly prejudicial given the time spent preparing and the
potential unavailability of their witnesses at future dates.  Id.
at 680.  On the same day, Nickerson-Reti filed her request for
production of documents to Minuteman.  Id.

The hearing officer scheduled a telephone conference to discuss the postponement issue, and after a two hour conversation, granted the motion as to the Current and Prospective Claims and denied the motion as to the Retroactive Claims, effectively bifurcating the case. Id. at 680-81. The hearing officer stated that Nickerson-Reti must submit her request for subpoenas and witness list by January 7 at 1:00 p.m. and submit her exhibits by January 8 at 1:00 p.m. Id. at 681. Nickerson-Reti missed the deadline to submit her exhibits. Id. At 12:58 p.m., January 8 (the day the exhibits were due), she left a voicemail message for the hearing officer stated that she hoped to get them in by 3:00 p.m. and had been doing everything she could, but had not slept in two days and could not get the documents in by 1:00 p.m. Id.

At 3:21 p.m. on January 8, Dr. John Ratey left a voicemail for the hearing officer stating that the call regarded a patient of his with whom the hearing officer would be dealing on Monday, and leaving his cell phone number for her to return his call. Id. at 681-82. The hearing officer was out sick on January 8. Id. at 681 n.5. That afternoon, both Lexington and Minuteman filed motions to exclude all exhibits proposed by Nickerson-Reti due to the prejudice caused by her failure to submit the documents on time. Id. at 682.

27

On Sunday, January 10, at 7:02 p.m., Shelly Greene, Nickerson-Reti's advocate, emailed counsel for Lexington and Minuteman, notifying them that Nickerson-Reti had "experienced a medical situation" which prevented her from timely submitting documents and would prevent her from appearing at the hearing the following day.  Id.  Greene sent a similar email to the hearing officer at 11:58 p.m., requesting that the hearing officer speak with Dr. Ratey regarding Nickerson-Reti's medical condition, and left a similar voicemail for the hearing officer at 12:28 a.m., Monday, January 11 (the day of the hearing).  Id. at 682-83.

On January 11, 2010, Lexington and Minuteman appeared for the hearing; neither Nickerson-Reti nor Greene appeared.  Id. at 683.  The hearing officer called Nickerson-Reti and with her permission placed two phone calls to Dr. Ratey within a few hours.  Id.  Nickerson-Reti stated multiple times that she was "sick," but did not elaborate on the nature of the illness.  Id. at 684.  Lexington and Minuteman moved to dismiss the case with prejudice for failure to prosecute, given the time they had spent preparing their documents and witnesses.  Id.  Nickerson-Reti responded that she could have the exhibits to the Bureau first thing the following morning and could begin the hearing on Thursday, January 14.  Id.

The hearing officer heard oral argument on the motions to dismiss approximately one hour later (allegedly giving Nickerson-

Reti the opportunity to consult with Greene), and the hearing officer granted the motion.  Id.  On January 13, Nickerson-Reti filed a motion objecting to the order and requesting to re-open the case.  Id.  Nickerson-Reti noted her dyslexia and attached numerous documents, including a statement from Dr. Ratey that he had been treating Nickerson-Reti for ADHD, depression, anxiety and other learning disabilities since March 2008 and met with her weekly.  Id.  Dr. Ratey noted in his statement that although Nickerson-Reti possessed a very high intellect and competence, she had extreme difficulty organizing material and profound difficulty processing written information.  Id.  Lexington opposed the motion, stating that Nickerson-Reti had not previously raised her disability, had not requested an extension at any time between January 7 and January 11, had not notified the parties of her inability to meet these deadlines, and had been able to submit documents in a timely manner between January 4 and January 7.  Id. at 684-85.  Minuteman also opposed the motion for reconsideration, stating that Nickerson-Reti had blatantly disregarded the orders and timelines established, had failed to prosecute her case and was now raising a "nebulous and unsubstantiated 'medical situation.'"  Id. at 685.  On February 1, 2010, Nickerson-Reti filed a 96-page document containing an 18-page objection to Lexington's and Minuteman's oppositions. Id. at 686.  In its opinion of February 17, 2010, the hearing

officer denied Nickerson-Reti's motion to re-open the case.  Id.
at 694-95.

### b.   Dismissal With Prejudice for Failure to Prosecute

The Bureau rules provide that "[i]f a party fails . . . to
appear at the scheduled hearing . . . the Hearing Officer may
dismiss the case with or without prejudice through a ten (10) day
Order to Show Cause, or may take evidence and issue such orders
as may be necessary . . . ."  Mass. Dep't of Elementary &
Secondary Educ., Hearing Rules for Special Education Appeals,
Rule X.F. (2008).  In this case, after Nickerson-Reti failed to
appear at the Retroactive Claims hearing on January 11, 2010, the
hearing officer allowed oral argument on Lexington's motion to
dismiss for failure to prosecute, orally granted the motion, and
subsequently issued a written ruling explaining the decision.
See Admin. R. 459, 674-95.

The case law is unclear on the standard of review on the
appeal of a hearing officer's dismissal with prejudice for
failure to prosecute.  In the context of an appellate court's
review of a district court's dismissal for failure to prosecute
pursuant to Federal Rule of Civil Procedure 41(b), the standard
of review is abuse of discretion.  Pomales v. Celulares
Telefónica, Inc., 342 F.3d 44, 48 (1st Cir. 2003).  In contrast,
the First Circuit has established that a district court reviewing
a hearing officer's determination must make an "independent

ruling based on the preponderance of the evidence." <u>Roland M.</u>, 910 F.2d at 989 (citations omitted) (internal quotation marks omitted).  The First Circuit has not specifically limited this standard to the review of substantive determinations, nor has it explicitly stated that this standard applies to procedural determinations.  In the absence of clear direction, this Court will adhere to the same standard of review it applied to the Current and Prospective Claims: the Court will make an "independent ruling based on a preponderance of the evidence" whether the hearing officer properly dismissed the Retroactive Claims with prejudice.

The First Circuit heavily favors disposition on the merits and asserts that a case ought not be dismissed with prejudice except "when a plaintiff's misconduct is particularly egregious or extreme." <u>Benjamin</u> v. <u>Aroostook Med. Ctr., Inc.</u>, 57 F.3d 101, 107 (1st Cir. 1995).  The court has repeatedly observed that "[i]n all the cases in which we have upheld a dismissal for want of prosecution, we have found either extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." <u>Cosme Nieves</u> v. <u>Deshler</u>, 826 F.2d 1, 2 (1st Cir. 1987) (citing cases); <u>see also</u> <u>Ortiz-Anglada</u> v. <u>Ortiz-Perez</u>, 183 F.3d 65, 67 (1st Cir. 1999); <u>Benjamin</u>, 57 F.3d at 108.

The First Circuit has acknowledged that mechanical rules are not appropriate for a determination to dismiss for failure to prosecute, and has set forth a list of "pertinent considerations," specifically "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness <u>vel non</u> of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." <u>Robson</u> v. <u>Hallenbeck</u>, 81 F.3d 1, 2 (1st Cir. 1996). Further, "where the case is close, courts should prefer less severe sanctions that preserve the possibility of disposition on the merits." <u>Pomales</u>, 342 F.3d at 48.

Nickerson-Reti's failure to appear at the hearing or adequately notify the parties in advance of her intended absence admittedly warranted some sanction by the hearing officer, yet the violation does not seem sufficiently severe to warrant dismissal with prejudice of Reti's Retroactive Claims.

The hearing officer did not give due consideration to Nickerson-Reti's mitigating excuse - i.e., her medical inability to prepare for and attend the hearing. The hearing officer acknowledged that Nickerson-Reti claimed to be "sick," Admin. R. 690, but went on to conclude that "[o]ver time a pattern has emerged . . . [where] Parent states that she wants a Hearing but when offered the opportunity to present her case, she requests

postponements," id. at 693.  Impliedly, the hearing officer did

not find Nickerson-Reti's medical excuse to be persuasive.  Yet

the hearing officer did not adequately develop a record as to

whether Nickerson-Reti's anxiety, depression, and Asperger's

severely limited Nickerson-Reti's activities the weekend before

the hearing.

The hearing officer stated that she twice attempted to

contact Dr. Ratey at approximately 7:45 a.m. California time for

explanation of Nickerson-Reti's medical situation, and that Dr.

Ratey failed to return her calls before she issued the order

dismissing the case.  Id. at 691.  Yet it seems unreasonable to

allow only a few hours (more specifically, pre-business hours)

for Nickerson-Reti's doctor to respond to her calls before

discounting Nickerson-Reti's medical excuse.  Dr. Ratey had

originally attempted to reach the hearing officer during business

hours on Friday, but the hearing officer was out sick.  Id. at

681 & n.5.  The hearing officer also noted that Dr. Ratey did not

leave any explanation in the voicemail on Friday as to Nickerson-

Reti's condition, id. at 691, but he may have been purposefully

vague for confidentiality reasons.

The hearing officer seemed to consider Nickerson-Reti's

statement that she could have the exhibits ready the following

day, and proceed to hearing three days later, to support the

schools' allegation that Nickerson-Reti was not truly

incapacitated or entitled to accommodation.  See id. at 692.
Yet, the hearing officer makes no statement as to why Nickerson-
Reti's offer was unacceptable.  Given the "recognized []
preference for hearing cases and deciding them on the merits"
cited by the hearing officer, id. at 694, and in light of
Lexington's and Minuteman's stated efforts to prepare throughout
the weekend for the hearing, id. at 684, it seems reasonable for
the hearing officer at least to address the possibility of giving
Nickerson-Reti one final chance to present her case - three days
after the scheduled hearing.  Rather, the hearing officer stated
that "considering the totality of this case as explained above,
the detriment to Lexington and Minuteman of their ability to
defend their positions in light of further delays, in conjunction
with Congress' preference to have IDEA cases decided in an
expeditious manner, dismissal with prejudice is warranted."  Id.
at 694.  The case may still have reached expeditious resolution,
and the detriment to the schools may have been abated, had the
proposed hearing date at least been considered.

This Court is instructed by a somewhat similar yet,
importantly, distinguishable First Circuit decision.  In Cintrón-
Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522
(1st Cir. 2002), the First Circuit upheld the district court's
dismissal with prejudice of a case for failure to prosecute.  Id.
at 528.  In Cintrón-Lorenzo, the pro se plaintiff filed a

complaint, but failed to seek issuance and service of summonses.
Id. at 524.  The court ordered her to show cause why her case
should not be dismissed for failure to prosecute.  Id.  Shortly
thereafter, the plaintiff served the defendants and filed a
written rejoinder requesting an additional forty-five to sixty
days to retain counsel.  Id.  Two months later, she filed a
request for a further sixty-day extension.  Id.

A few days later, the defendant filed a motion to dismiss
(and a month thereafter, a supplemental motion to dismiss).  Id.
at 524-25.  The plaintiff did not respond to either motion.  Id.
at 525.  The second sixty-day extension period expired with no
word from the plaintiff, and a third motion to dismiss was filed
(to which motion the plaintiff did not respond).  Id. at 525.
Three weeks later, the court issued an order warning that the
plaintiff had two weeks to obtain counsel or respond to the
motions, else the court would consider dismissing the case for
failure to prosecute.  Id.  Again, the plaintiff did not respond,
and the court dismissed the case as warned.  Id.  The plaintiff
soon thereafter, through counsel, submitted a motion for
reconsideration, which the court denied.  Id.

Cintrón-Lorenzo is distinguishable from the instant case for
several reasons.  The First Circuit noted the plaintiff's
"protracted - and largely unexplained - noncompliance" "in the
teeth of explicit warnings."  Id. at 526.  In contrast to the

plaintiff in Cintrón-Lorenzo, who failed to contact the court for the majority of seven months, Nickerson-Reti was in constant contact with the hearing officer and parties and at the very least requested postponements or accommodations regarding various deadlines.  Admin. R. at 675-82.  While Dr. Ratey and Shelly Greene's efforts the weekend before the hearing may not have put the hearing officer and parties sufficiently on notice of Nickerson-Reti's intended absence, Nickerson-Reti was significantly more communicative than the Cintrón-Lorenzo plaintiff.  Cf. 312 F.3d at 527 ("At the very least, Cintrón could - and should - have notified the court both of her inability to comply and of the reasons for that noncompliance.").

More significantly, the plaintiff in Cintrón-Lorenzo, herself an attorney, was explicitly warned twice that the court would dismiss the case with prejudice if she did not comply with the court's orders.  Id. ("Having been warned twice that noncompliance could result in dismissal, she maintained a stoic silence at her peril.").  While the hearing officer had warned the parties she would be disinclined to grant further postponements, Admin. R. 679, Nickerson-Reti was not warned of the possibility of dismissal, nor does any party claim Nickerson-Reti was an attorney or otherwise well-versed in administrative or judicial procedure.

Admittedly, the facts leading up to the hearing officer's dismissal of Nickerson-Reti's case with prejudice create a "close call" as to whether dismissal was appropriate.  The First Circuit has made clear, however, that in the event of a "close call," a case ought proceed on the merits.  <u>Pomales</u>, 342 F.3d at 48.  This seems particularly true in light of the fact that the loss of right to prosecute the Retroactive Claims was not just borne by Nickerson-Reti, but was borne by Reti, the student who allegedly was discriminated against and denied a free appropriate public education.

In their reply memorandum, the Local Defendants acknowledged that "if the Court were to find . . . that the retroactive claims were <u>not</u> properly dismissed, plaintiffs' only remedy would be an order of remand to the BSEA for its further determination."  Local Defs.' Reply 3 n.4 (citing <u>Doe ex rel. Doe</u> v. <u>Attleboro Pub. Sch.</u>, Civil Action No. 09-12127, 2011 WL 3854649 (D. Mass. Aug. 31, 2011) (Casper, J.)).  While this Court acknowledges the not insignificant prejudice to Lexington and Minuteman that may be created by remanding the matter to be heard now, almost two years after the original hearing date, the balance of injustices weighs in favor of reversing the hearing officer's dismissal with prejudice and remanding the matter to be heard on the merits.  If an evaluation of the retroactive claims leads to a finding in favor of the Retis, the typical remedies of compensatory

37

educational services and reimbursement remain available.  See
Maine Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 17-18 (1st
Cir. 2003) (noting that a student "eligible for special education
services . . . may be entitled to further services, in
compensation for past deprivations"); Town of Burlington, 471
U.S. at 369-70 (allowing "reimburse[ment of] parents for their
expenditures on private special education for a child if the
court ultimately determines that such placement, rather than a
proposed IEP, is proper").  These expenses may include expenses
incurred during homeschooling as in the case at bar.  Cf. Chavez
v. Board of Educ. of Tularosa Mun. Sch., 614 F. Supp. 2d 1184,
1215-16 (D.N.M. 2008) (Browning, J.) (discussing reimbursement
for homeschooling as possible, but denying it for lack of
supporting evidence as to exact expenses) aff'd in part, rev'd in
part sub nom. Chavez v. New Mexico Pub. Educ. Dep't, 621 F.3d
1275, 1289 (2010) (approving the district court's decision and
reasoning regarding lack of evidence for reimbursement).

### 4.   Evaluations and Reimbursement (Bureau Decision #10-2604)

The Retis also appeal Bureau Decision #10-2604, decided on
December 7, 2009.  Second Am. Compl. ¶¶ 132-138.  While neither
the complaint nor the opposition brief is explicit on the matter,
it appears that the Retis contest three holdings made by the
hearing officer.

### a. Entitlement to Functional Living Skills Evaluation

The hearing officer held that Reti was entitled to an independent Adaptive Physical Education evaluation, but was not entitled to an independent Functional Living Skills evaluation. Supplemental Admin. R. at 89-91.

Massachusetts regulations provide that "if the parent is requesting an independent education evaluation in an area not assessed by the school district," the district may "proceed to the Bureau of Special Education Appeals to show that its evaluation was comprehensive and appropriate." 603 Mass. Code Regs. 28.04(5)(d). Nickerson-Reti sought an independent Vocational evaluation and an independent Functional Living Skills evaluation, arguing that the Local Defendants' evaluations did not inform what transitional services may be needed to prepare Reti for post-secondary education, jobs, and independent living. Supplemental Admin. R. at 89-91. Lexington agreed to an independent Vocational evaluation, but argued that there was no basis for a separate Functional Living Skills evaluation, as its Vocational/Transitional and Psychological evaluations were "comprehensive and appropriate" and addressed this area of need. Id. at 79, 91.

The hearing officer found that the evaluations performed by Lexington, supplemented by the additional Vocational evaluation Lexington agreed to, provided a "wealth of information" regarding

Reti's functional living skills and made appropriate recommendations.  Id. at 91, 95.  Nickerson-Reti summarily argues in her opposition brief that the hearing officer erred in her comparison and understanding of the evaluations, and thus was incorrect in her conclusion that an independent Functional Living Skills evaluation was not warranted.  Pls.' Opp'n 23.

The Retis have failed to articulate in their complaint or opposition brief why the existing evaluations were not "comprehensive and appropriate."  As the Retis provide no argument why the hearing officer's decision was in error, they fail to meet their burden of proving by a preponderance of the evidence that the Bureau decision was wrong.  See Roland M., 910 F.2d at 989-90.

Moreover, this Court finds the Bureau decision to be reasonable based on a "bounded, independent" review of the administrative record.  See id. at 990.  The Vocational evaluation performed by Lexington addresses emotional and behavioral concerns as well as coping and adaptive needs (e.g., "[d]ressing neatly and appropriately for the situation[, a]bility to handle living arrangements independently[, e]ffect on performance and morale of peers[, p]hysical stamina for lifting, loading, or prolonged standing[, a]bility to stand up to stressful situations").  Supplemental Admin. R. at 192.  The psychological evaluation recommended support in areas to address

40

Reti's executive functioning ability, specifically regarding schedules and organization.[8]  Id. at 114.  The Court thus concurs with the hearing officer's conclusion that the evaluations provided a sufficient "starting point to address [Reti's] Functional Living Skills and Independent Living Skills," id. at 90, and that Lexington met its burden of showing that the evaluations in existence (in conjunction with the approved independent Vocational evaluation) were "comprehensive and appropriate," id. at 88 (quoting 603 Mass. Code Regs. 28.04(5)(d)).

### b.   Reimbursement for Neuropsychological Evaluation

The second issue to be determined was whether Nickerson-Reti was entitled to reimbursement for the Neuropsychological Evaluation conducted by Dr. Lovecky.  Id. at 78.  The hearing officer noted that this issue was precluded because a prior hearing officer denied Nickerson-Reti's identical request in a ruling issued on May 29, 2009.  Id. at 94-95.  The Retis have raised no argument why this holding was in error.  The Court affirms the hearing officer's determination.

---

[8]The hearing officer's decision also notes parent-reported concerns about "personal hygiene" as part of the executive functioning analysis in the psychological evaluation, but the psychological evaluation does not appear to include notes on personal hygiene.  Supplemental Admin. R. at 90.  The Vocational evaluation, however, does note concerns relating to personal hygiene such as dressing neatly.  Id. at 192.

### c.   Reimbursement at Higher Rates

The third issue to be determined was whether Lexington was required to reimburse Nickerson-Reti at amounts greater than the Massachusetts established rates for evaluations.  Id. at 78.  The hearing officer held that Nickerson-Reti was entitled to reimbursement for the evaluations, but at the ordinary rates.

A parent is only entitled to reimbursement at higher rates if the parent demonstrates that "unique circumstances of the student [] justify an individual assessment rate that is higher than that normally allowed."  603 Mass. Code Regs. 28.04(5)(a). Lexington argues that despite Reti's complex learning profile and slow processing skills, evaluators were able thoroughly and comprehensively to evaluate Reti within a reasonable time frame. Supplemental Admin. R. at 92.

The hearing officer found, and the record supports, that Nickerson-Reti did not produce any current evidence that unique circumstances existed as to each type of evaluation.  Id. at 93-94.  Rather, she relied on outdated evidence (over two years old) and the fact that, in the past, Lexington had agreed to reimburse evaluations at higher rates.  Id. at 94.  Nickerson-Reti also made no showing that she attempted to identify qualified evaluators who could abide by regulated rates, and produced no evidence as to whether her selected evaluators accepted regulated

42

rates, whether those evaluators stated additional time was necessary, and what the rates in fact may be.  Id. at 93.

The Retis have not raised any arguments in their complaint or opposition brief as to why the hearing officer erred in holding Nickerson-Reti was only entitled to reimbursement at the ordinary rate.  The Court affirms the hearing officer's determination.

## B.   Alleged Violations of the ADA and Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act of 1973 ("Section 504") prohibits recipients of federal funding from discriminating based on disability.  29 U.S.C. § 794.  Title II of the Americans with Disabilities Act of 1990 extends this prohibition to all public entities.  42 U.S.C. § 12132.  The provisions, treated interchangeably for the purposes of substantive analysis, see Parker v. Universidad de P.R., 225 F.3d 1, 4 (1st Cir. 2000), provide that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (substantially mirroring the text of Section 504, 29 U.S.C. § 794).  The Retis claim that the Local and State Defendants have violated both the ADA and Section 504.

### 1.   Standard of Review

Unlike the unique standard of review employed for claims brought under the IDEA, claims brought under the ADA and Section 504 of the Rehabilitation Act are subject to the traditional standard of review for summary judgment.  Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" if there exists a sufficient evidentiary basis on which the trier of fact could find for the non-moving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it will affect the outcome of the case under the applicable law.  Id.

The moving party bears the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The evidence of non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  Other than facts admitted by both parties, the court must disregard all evidence favorable to the moving party - even if unopposed - which the jury is free to reject, i.e., all evidence upon which the moving party bears the burden of proof.  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 151 (2000).  Thus, summary judgment may be granted when a fair-minded jury could reach only one conclusion: in favor of the moving party.

**2.   Alleged Violations Arising Out of the Retroactive Claims**

The IDEA stipulates that claims brought under the ADA or the Rehabilitation Act seeking relief available under the IDEA are subject to the same administrative exhaustion requirements as claims brought directly under the IDEA.  20 U.S.C. § 1415(l). The First Circuit has construed this provision broadly to include claims that seek monetary relief not available under the IDEA. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 64 (1st Cir. 2002). The First Circuit asserts that the zone of interests protected under the IDEA, and thus triggering the exhaustion requirement, is vast, because the IDEA affords individuals the "opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Weber v. Cranston Sch. Comm., 212 F.3d 41, 51 (1st Cir. 2000) (emphasis added) (quoting 20 U.S.C. § 1415(b)(6)).

As this Court stated supra, the retroactive claims are remanded to the hearing officer to be considered on the merits. As such, the alleged discrimination in violation of the ADA (Count Five) and Section 504 violations (Count Nine), in so far as they relate to the Retroactive Claims, are dismissed without prejudice for failure to exhaust administrative remedies and remanded to the Bureau.

The alleged retaliation in violation of the ADA (Count Six) - particularly, Nickerson-Reti's allegation that Lexington maliciously filed a child abuse report against her with Social Services - initially seems to present a closer question as to whether the claim falls within the zone of interests protected under the IDEA.  The First Circuit in Weber, however, found similar allegations to be precluded under the administrative exhaustion requirement.  212 F.3d at 50, 53-54.  The parent in Weber alleged that the school district retaliated against her by denying her access to her son's records, restricting communication with her son's teachers, and threatening to report her to the child welfare agency.  Id. at 44.  The district court precluded her claims because she failed to raise them at an administrative due process hearing.  Id.  The First Circuit held that in light of the IDEA's protection of parents' rights and emphasis on procedural safeguards, the parent's claim "easily meets the 'arguably within the zone of interests' standard."  Id. at 51.

Notably (and somewhat confusingly), the court went on to explain that had the parent actually raised any arguments opposing the administrative exhaustion requirement, the question would have been a close one.  Id. at 52.  The court noted that the regulations provide for due process hearings that directly challenge proposals or actions regarding a child's education,

46

thus the regulations may provide (or the hearing officer may conclude) that claims of retaliation are outside the scope of the agency's authority.  <u>See</u> <u>id.</u>  The court stated that the parent did not raise any such argument, however, and they "refuse[d] to construct these arguments for her."  <u>Id.</u> at 52-53.

Similarly, Nickerson-Reti has not made any arguments as to why the administrative exhaustion requirement is a futility.  It is not for this Court to construct such arguments for her.  <u>Weber</u> is directly on point, and this Court dismisses without prejudice Count Six, retaliation under the ADA, and remands the matter to the Bureau.

### 3. The Alleged Violations Arising Out of the Current and Prospective Claims

The case law establishes that "something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 [or the ADA] in the context of educating children with disabilities, i.e., a plaintiff must demonstrate that a school district acted with <u>bad faith</u> or <u>gross misjudgment</u>." <u>Millay</u> v. <u>Surry Sch. Dep't</u>, 584 F. Supp. 2d 219, 235 (D. Me. 2008) (Woodcock, J.) (emphasis added) (quoting <u>Scaggs</u> v. <u>N.Y. Dep't of Educ.</u>, No. 06-CV-0799, 2007 WL 1456221 at *15 (E.D.N.Y. May 16, 2007) (Bianco, J.) (quoting <u>Wenger</u> v. <u>Canastota Cent. Sch. Dist.</u>, 979 F. Supp. 147, 152 (N.D.N.Y. 1997) (Scullin, J.))).

As discussed <u>supra</u>, the Retis have not met their burden of sufficiently pleading a violation of the IDEA by either the Local or State Defendants.  Thus, their allegations regarding the ADA and Section 504 fail as matter of law.  Moreover, there is nothing in the pleadings regarding the Current and Prospective Claims which would suggest "gross misconduct" or "bad faith" by any defendant.  Therefore, this Court grants summary judgment as to the alleged discrimination in violation of the ADA (Count Five) and Section 504 violations (Count Nine), in so far as they relate to the Current and Prospective Claims.

## III.   CONCLUSION

For the foregoing reasons, the Court:

-DISMISSES WITHOUT PREJUDICE Count One (IDEA - Failure to Provide an Appropriate IEP) <u>to the extent it applies to the Retroactive Claims</u>, in light of the remand of the Retroactive Claims to the Bureau.

-GRANTS summary judgment in Count One (IDEA - Failure to Provide an Appropriate IEP) as to the State and Local Defendants <u>to the extent it applies to the Current/Prospective Claims</u>.

-DISMISSES WITHOUT PREJUDICE Count Two (IDEA- Failure to Implement the Appropriate Provisions of the IEP), in light of the remand of the Retroactive Claims to the Bureau.

-DISMISSES WITHOUT PREJUDICE Count Five (ADA - Discrimination Against Reti), <u>to the extent it relates to</u>

Retroactive Claims, in light of the remand of the Retroactive
Claims to the Bureau, AND GRANTS summary judgment on Count Five
the State and Local Defendants to the extent it relates to
Current and Prospective Claims.

   -DISMISSES WITHOUT PREJUDICE Count Six (ADA - Retaliation
Against Nickerson-Reti), to the extent it relates to Retroactive
Claims, in light of the remand of the Retroactive Claims to the
Bureau, and GRANTS summary judgment on Count Six as to the State
and Local Defendants to the extent it relates to Current and
Prospective Claims.

   -DENIES summary judgment in Count Seven as sought by the
State and Local Defendants (Appeal of Bureau Decision #09-0139)
as to the Retroactive Claims (Decision of February 17, 2010) and
sua sponte GRANTS summary judgment in favor of the Retis in
accordance with Fed. R. Civ. P. 56(f), reversing the hearing
officer's dismissal and remanding the matter to be heard on the
merits.

   -GRANTS summary judgment in Count Seven as to the State and
Local Defendants as to the Current and Prospective Claims
(Decision of May 21, 2010).

   -GRANTS summary judgment in Count Eight[6] as to the State and
Local Defendants (Appeal of Bureau decision #10-2604).

--------

   [6] The Retis mistakenly label this claim "Count VII," but it
is in fact Count Eight.

–DISMISSES WITHOUT PREJUDICE Count Nine[7] (Section 504 of the Rehabilitation Act), <u>to the extent it relates to Retroactive Claims</u>, in light of the remand of the Retroactive Claims to the Bureau, and GRANTS summary judgment on Count Nine as to the State and Local Defendants <u>to the extent it relates to Current and Prospective Claims</u>.

**SO ORDERED.**


 <u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[7] The Retis do not number this claim, but it is in fact Count Nine.